UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILDEY J. MOORE,                          :
        PLAINTIFF,                        :
                                          : CIVIL ACTION NO. 3:10cv891(VLB)
                                          :
        v.                                : MARCH 4, 2012
                                          :
F.A. INVESTMENT HOLDINDS,LTD.             :
        DEFENDANTS.                       :

MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. #31]

Before the Court is a motion for summary judgment filed by the Defendant, F.A. Investment Holdings, LTD. ("F.A. Investment or FAI").  The Plaintiff, Wildey J. Moore ("Moore") brought this suit in diversity in his individual capacity alleging two claim.  First, that F.A. Investment as majority shareholder in Wildey F.A., Inc. (the "Corporation") breached the fiduciary duty it owed to Moore, the Corporation's minority shareholder, and second that Defendant engaged in a negligent infliction of emotional distress.  For the reasons stated hereafter, Defendant's motion for summary judgment is granted.

Background

On December 15, 2011, the present case was transferred to this Court from another court in the District of Connecticut.   The case was originally removed from the Connecticut Superior Court to the District of Connecticut on June 7, 2010.

1

On July 30, 2007, Defendant moved to dismiss Plaintiff's breach of fiduciary duty claim on the basis that Plaintiff lacked standing to assert such a claim in his individual capacity. *See* [Dkt. #17]. Defendant argued that the claim belonged to the Corporation and could only be asserted in a derivative not direct action. On November 17, 2010, the prior court denied Defendant's motion to dismiss without prejudice to raising the same issues in a motion for summary judgment. *See* [Dkt. # 29]. Defendant then filed a motion for summary judgment on this same exact issue arguing again that Moore lacks standing to bring a breach of fiduciary duty claim directly. *See* [Dkt. #31]. Defendant also argues that summary judgment should be granted on Plaintiff's negligent infliction of emotional distress claim since Plaintiff has admitted that he did not suffer any emotional distress as a result of Defendant's conduct. In opposition to the summary judgment motion, Plaintiff indicated that he has abandoned his claim for negligent infliction of emotional distress and conceded to judgment entering in favor of Defendant on that claim. See [Dkt. #38, Pl. Mem. at 2].

After the case was transferred to this Court, the Court ordered the parties to confer and file a joint status report and directed the Plaintiff to indicate if he intended to amend the complaint to bring a derivative action. *See* [Dkt. #45]. In the joint status report, Plaintiff indicated that he did not intend to amend the complaint to assert a derivative claim. *See* [Dkt. #46].

<u>Facts</u>

The following facts relevant to Defendant's motion for summary judgment are undisputed unless otherwise noted.  Although Defendant has filed a motion for summary judgment, both parties mainly rely on the allegations made in Plaintiff's verified complaint as opposed to the parties' Local Rule 56 statements. However, a verified complaint may "be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

The Corporation is a Connecticut corporation with a principal office in Warren, Connecticut and is engaged in the design, development, production, sale manufacture and export of automatic and semi-automatic firearms.  See [Dkt. #1, Compl. at ¶3].  Moore founded the Corporation in 1973 and has a 49% ownership interest in the Corporation.  [*Id.* at ¶4].

King Abdullah II of Jordan and the King Abdullah II Design and Development Bureau ("KADDB") approached Moore about developing a semi-automatic pistol for the Jordanian armed forces which would be later named the "Viper."  [*Id.* at ¶5].   On December 6, 2006, the Corporation obtained a Manufacturing License Agreement from the United States Department of State in connection with the design and development of the Viper.  [*Id.* at ¶6].

Haitham Mufti ("Mufti") headed KADDB and then formed F.A. Investment, a British Virgin Island corporation.  Mufti was appointed as president of F.A.

Investment. [*Id.* at ¶¶2,7].  F.A. Investment acquired a 51% ownership interest  in the Corporation from Moore's then majority partner Richard Rodrigue.  [*Id.*].

Moore alleges that Mufti represented that F.A. Investment would be a passive investor who had no authority to direct or cause the direction of the management, policies and buying and selling practices of the Corporation.  [*Id.* at ¶8].  Moore also alleges that Mufti represented to him that F.A. Investment's role was to fund the Corporation's business.  [*Id.*].  Moore and his wife Linda Moore served as Directors of the Corporation. [*Id.*].

On May 18, 2006, Moore suffered a stroke and was hospitalized and in rehabilitation until September 22, 2006.  [*Id.* at ¶12].

Beginning in 2007 and continuing to date, Moayad Samman ("Samman") replaced Mufti as the chairman and CEO of KADDB and assumed control of F.A. Investment.  [*Id.* at ¶14].  Moore alleges that after Samman was in control, F.A. Investment "engaged in a continuing course of conduct to assert total control and direction of the management, policies, and buying and selling practice of the Corporation as they pertained to all firearms." [*Id.*].

Moore alleges that since 2007 F.A. Investment has "engaged in a continuing course of conduct aimed at ensuring that Plaintiff would receive no monetary return from his stock ownership and aimed at ensuring that Plaintiff would be shut out from the operational and financial management of the Corporation" in the following ways.  Initially "[i]n 2007, without any prior notice to Plaintiff, and knowing of Plaintiff's financial and physical vulnerability due to a

recent stroke, FIA cut *off* funding to the Corporation; forcing Plaintiff to terminate three employees including Plaintiff's wife and cut back on the hours on another employee. Medical insurance and other insurance payments were stopped and Plaintiff's pay was cut."

"Samman, FAI and KADDB cancelled a certain contract for the sale of Jordanian military surplus which contract had been arranged by the Plaintiff which would *have* benefited the Plaintiff and the Corporation."

"Samman and others, acting on behalf of KADDS and FAI, unilaterally fabricated financial entries resulting in a multi-million dollar shareholders loan from KADDS and/or FAI and coerced the Plaintiff into agreement with such entries with the threat of firing him and taking away from him any chance of obtaining a monetary return from his stock ownership in the Corporation."

"FAI prohibited the Plaintiff from selling any Wildey Survivor guns or parts or manufacture and sell ammunition to generate revenue; further stripping Plaintiff of his ability to obtain a monetary return from his stock ownership."

"FAI required thal Plaintiff's work focus entirely on the Viper pistol and other projects of the King without attention to the overall financial health of the Corporation.

Moore further alleges that "[k]nowing of Plaintiff's financial and physical vulnerability due to a recent stroke" Samman, on behalf of FAI and KADDS, proceeded to continue to apply financial pressure on the Plaintiff in an attempt to

have him sell his 49% interest to FAI for relatively little value; continually misrepresenting to the Plaintiff that the Viper pistol was a failure."

"FAI proposed to amend the MLA to circumvent the Corporation and Plaintiff's role in importing and exporting the Viper pistol. Plaintiff and his wife refused to support the proposed amended MLA and subsequently were relieved from their duties as officers of the Corporation" and then "Plaintiff and his wife were removed as Directors of the Corporation." "On September 30,2009 the Plaintiff was fired from his employment with the Corporation." [*Id.* at ¶15].  Moore did not have a written employment agreement with the Corporation and he was an at will employee. See [Dkt. #33, Def. Local 56 Statement at ¶¶3-4.  In the parties' Local Rule 56 Statements, Moore admits that his employment allegations relating to terminating employees, cutting hours, pay or benefits are unrelated to his stock ownership.  [*Id.* at ¶8].

In the parties' Local Rule 56 Statements, Moore admits that many of the actions he is alleging were a breach of F.A. Investment's fiduciary duty equally affected the value of both Moore's minority shares and F.A. Investment's majority shares.  Moore admits that any damage resulting from the alleged cancellation of the contract for the sale of Jordanian surplus equally affected the value of both Moore's minority shares and F.A. Investment's majority shares.  [*Id.* at ¶10].  Moore also admits that any damage resulting from F.A. Investment's alleged decision to focus on the Viper pistol rather than the Wildey Survivor firearm equally affected the value of both Moore's minority shares and F.A. Investment's majority shares.  [*Id.* at ¶12].

Moore never sold any of his stock in the Corporation as a result of F.A. Investment's alleged attempts to force him to sell his minority shares.  [*Id.* at ¶13]. Moore alleges he suffered damages as a result of F.A. Investment's attempts to force him to sell his minority shares in that he was forced to agree to characterize sums paid by F.A. Investment or KADDB as loans.  [Dkt. #39, Pl. Local Rule 56 Statement at ¶15].

Between June 2004 and December 2007, F.A. Investment's provided more than $1.5 million of funds to the Corporation.  There was no written agreement that funds provided by F.A. Investments to the Corporation were to be used as operating capital or a gift.  See [Dkt. #33, Def. Local 56 Statement at ¶¶17,29]. Moore and his wife signed corporate tax returns that classified the funds provided by F.A. Investment as "JAWS LOAN."  [*Id.* at ¶20].

F.A. Investment alleges that the funds were always intended to be a loan to the Corporation and were never intended to be operating capital or a gift.  [*Id.* at ¶¶21-22].  Moore alleges that he and his wife were forced to agree to characterize the funds as loans under the threat of being fired.  [Dkt. #39, Pl. Local Rule 56 Statement at ¶¶21-22].

F.A. Investment alleges that Moore has suffered no ascertainable loss resulting from the treatment of the funds as a loan.  [Dkt. #33, Def. Local 56 Statement at ¶24].  Moore argues that he suffered a loss since "any distribution of profits to Moore will come after the payment of the loans Moore was forced to agree to.  As a result the majority shareholder will improperly receive improper

distributions by way of repayment of a fictitious loan and Plaintiff's claim to distributions has been diluted."  [Dkt. #39, Pl. Local Rule 56 Statement at ¶24].

## Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).  At the summary judgment stage of the proceeding, plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch-Rubin v. Sandals Corp.*, No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted).

<u>Analysis</u>

Defendant argues that Moore as minority shareholder lacks standing to assert a claim for breach of fiduciary duty directly  as such claim belongs to the Corporation and must be brought derivatively.  Plaintiff argues that his claims are not derivative since he has suffered an individual injury and thus his claim may be brought directly.

"In determining standing, courts differ on whether to apply the law of the state in which the suit is brought or the law of the state of incorporation."  *Halo Tech Holdings, Inc. v. Cooper*, Civ.No.3:07-cv-489 (AHN),, 2008 WL 4080081, at *3n.4 (D. Conn. Aug. 29, 2008).  Here since the suit was brought in Connecticut and the Corporation is a Connecticut corporation there is no dispute that Connecticut law applies to determine standing.   Connecticut courts have acknowledged that the "principles of shareholder standing are largely similar under Connecticut and Delaware law" and therefore Connecticut courts will look to Delaware law to the extent it is instructive.  *Id.* (citing *Morgan Howard (United States) LLC v. Lewis*, No.FSTCV0500634S, 2006 WL 2348892, at *4 (Conn. Sup. Ct. July 14, 2006)).

The Connecticut Supreme Court revisited the issue a shareholder standing in its recent decision in *May v. Correy*, 291 Conn. 106, (2009).  In *May*, minority shareholders in a closely held corporation in their individual capacities brought claims against other minority shareholders for breach of fiduciary duty and unjust enrichment.   The Connecticut Supreme Court explained that a derivative

suit "'is an equitable action by the corporation as the real party in interest with a stockholder as a nominal plaintiff representing the corporation … It is designed to facilitate holding wrongdoing directors and majority shareholders to account and also to enforce corporate claims against third persons.  If the duties of care and loyalty which directors owe to their corporations could be enforced only in suits by the corporation, many wrongs done by directors would never be remedied.'" 291 Conn. at 114-125 (quoting *Barrett v. Southern Connecticut Gas Co.*, 172 Conn. 362, 370 (1977)).

The *May* court further explained that the Connecticut Supreme Court had previously held in *Yanow v. Teal Industries, Inc.*, 178 Conn. 262 (1970) that

> A distinction must be made between the right of a shareholder to bring suit in an individual capacity as the sole party injured, and his right to sue derivatively on behalf of the corporation alleged to be injured.... Generally, individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the shareholder individually, but to the corporation-to the shareholders collectively.... In this regard, it is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding secondarily, deriving his rights from the corporation which is alleged to have been wronged.... It is, however, well settled that if the injury is one to the plaintiff as a stockholder, and to him individually, and not to the corporation, as where an alleged fraud perpetrated by the corporation has affected the plaintiff directly, the cause of action is personal and individual.... In such a case, the plaintiff-shareholder sustains a loss separate and distinct from that of the corporation, or from that of other shareholders, and thus has the right to seek redress in a personal capacity for a wrong done to him individually.

178 Conn. at 281-82 (internal quotation marks and citations omitted).

In *May*, the Connecticut Supreme Court explained that it had "reaffirmed the general rule that '[i]n order for a shareholder to bring a direct or personal

10

action against the corporation or other shareholders, that shareholder must show an injury that is separate and distinct from that suffered by any other shareholder or by the corporation.... [A] shareholder-even the sole shareholder-does not have standing to assert claims alleging wrongs to the corporation.'" *May*, 291 Conn. at 115 (quoting *Smith v. Synder*, 267 Conn. 456, 461 (2004)).

The Connecticut Supreme Court also clarified that a derivative not direct suit is appropriate even where one of the shareholders participated in and benefited from the alleged wrongdoing.  "[N]othing in our case law suggests, that an individual cause of action is required when a derivative action would have the indirect effect of redressing an injury to those shareholders whose self-dealing caused the harm to the corporation." *Id.* at 118. The Connecticut Supreme Court suggested that where a majority shareholder intentionally depletes the corporation's assets for the sole purpose of decreasing the value of the minority shareholder's stock that action would nonetheless be derivative.  *Id.* at 119 (citing *Sax. v. World Wide Press, Inc.*, 809 F.2d 610, 614 (9th Cir. 1987)).

Accordingly, the central inquiry before the Court is whether any of the alleged conduct that Moore complains of caused him to suffer an injury that is separate and distinct from that suffered by any other shareholder or by the corporation.  If so, Moore will have standing to maintain his claim directly.  If however, the alleged conduct resulted in an injury that was not separate and distinct but rather also affected the Corporation or other shareholders, the claim must be brought derivatively and Moore will not have standing to maintain the claim directly.

11

    *a.* **The injury to Moore from F.A. Investment's decision to cut off funding to the Corporation is not separate and distinct from that suffered by the Corporation or all shareholders**

       Moore alleges that F.A. Investment "cut off funding to the Corporation; forcing Plaintiff to terminate three employees including Plaintiff's wife and cut back on the hours on another employee. Medical insurance and other insurance payments were stopped." [Dkt. #1, Compl. at ¶15]. However this injury belongs to the Corporation as a whole and is not separate and distinct to Moore as a minority shareholder. First, Moore acknowledges that his allegations regarding the termination of employees, cutting hours, pay or benefits are unrelated to his stock ownership and therefore concedes that this alleged injury is not unique to him as a minority shareholder but rather belongs to the Corporation. Second, cutting off funding to the Corporation is patently an injury to the Corporation and not unique to Moore.

       Moore's alleged injury as a minority shareholder is therefore purely derivative to that of the Corporation's injury. Moore's claim is that the Corporation was less profitable as a result of the funding cut thereby causing his stock to be less valuable. Such a claim is quintessentially a derivative claim. *See Yanow*, 178 Conn. at 281-83 ("Generally, individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the stockholder individually, but to the corporation-to the shareholders collectively."). Therefore, Plaintiff cannot maintain a direct cause of action for breach of fiduciary duty based on this alleged conduct.

**b. The injury to Moore from F.A. Investment's decision to cancel a contract for sale of Jordanian military surplus is not separate and distinct from that suffered by the Corporation or all shareholders**

Moore alleges that F.A. Investment "cancelled a certain contract for the sale of Jordanian military surplus which contract had been arranged by the Plaintiff which would *have* benefited the Plaintiff and the Corporation." [Dkt. #1, Compl. at ¶15].  First, Moore concedes in his own allegation that the contract would have benefitted the Corporation and therefore expressly acknowledges that the Corporation was also injured by its cancellation.  Second, he admits that any damage resulting from the alleged cancellation of the contract for the sale of Jordanian surplus equally affected the value of both Moore's minority shares and F.A. Investment's majority shares.  [Dkt. #33, Def. Local 56 Statement at ¶8].  Accordingly, this injury belongs to the Corporation, would have impacted all shareholders and is therefore not separate and distinct to Moore as a minority shareholder.  The cancellation of the contract is really a claim that F.A. Investment interfered with the Corporation's revenues and therefore must be brought derivatively.  *See Halo Tech Holdings, Inc.*, 2008 WL 4080081, at *4 (finding that allegations that defendants interfered with company's revenues which "set off a domino reaction-one injury cause another, and so on" did not mean that defendants' mismanagement directly injured shareholder and therefore shareholder's injuries were not separate and distinct from the company's injuries).  Therefore, Plaintiff cannot maintain a direct cause of action for breach of fiduciary duty based on this alleged conduct.

13

### c. The injury to Moore from F.A. Investment's fabrication of financial entries resulting in a shareholder loan is not separate and distinct from that suffered by the Corporation or all shareholders

Moore alleges that F.A. Investment "unilaterally fabricated financial entries resulting in a multi-million dollar shareholders loan from KADDS and/or FAI and coerced the Plaintiff into agreement with such entries with the threat of firing him and taking away from him any chance of obtaining a monetary return from his stock ownership in the Corporation."  [Dkt. #1, Compl. at ¶15].   Here again the injury from treating the funds as loans is to the Corporation and would affect all shareholders.   In fact, Moore argues that he suffered a loss from the treatment of the funds as a loan since "any distribution of profits to Moore will come after the payment of the loans Moore was forced to agree to.  As a result the majority shareholder will improperly receive improper distributions by way of repayment of a fictitious loan and Plaintiff's claim to distributions has been diluted."  [Dkt. #39, Pl. Local Rule 56 Statement at ¶24].   However, F.A. Investment as majority shareholder would suffer the same exact loss as Moore in that any distribution of profits to it as majority shareholder would also only occur after the payment of the loans.  Consequently, Moore has not alleged an injury that is distinct and separate from that which F.A. Investment would also suffer.   Moreover, the Corporation itself suffered in that it incurred a debt as opposed to receiving a capital contribution or gift and would arguably be less profitable as a result.

Moore seems to be suggesting that F.A. Investments wouldn't be injured in the same way as himself since F.A. Investments would also be receiving the benefits of the loan being paid back to itself.  Moore's argument appears to be

14

premised on the fact F.A. Investment would uniquely profit since it forced the Corporation to pay back the funds when it allegedly forced the Corporation to treat the funds as a loan instead of as a gift.   However this argument is somewhat misplaced as it focuses on the benefits that F.A. Investment was able to realize in its capacity as lender as opposed to the injuries suffered by the Corporation itself and thereby to all its shareholders.   F.A. Investment in its capacity as a shareholder of the Corporation was affected by the loan itself in the same manner as Moore.

The Connecticut Supreme Court's decision in *May* is instructive on this point.  In *May*, the plaintiffs alleged that the defendant shareholders set an unreasonably low offering price for additional shares offered to existing shareholders.   Some of the existing shareholders were able to offset the injury to their existing shares by participating in the offering and therefore plaintiffs argued their injury was unique from the other shareholders who offset.   However the Connecticut Supreme Court explained that the plaintiffs "focused on the wrong inquiry" as the issue wasn't whether existing shareholders were able to offset their injury but "whether the company, i.e., all existing shareholders, suffered an injury as a result of the unreasonably low offering price of the new shares." *May*, 291 Conn. at 118.  The Connecticut Supreme Court concluded that "[i]t is undisputed that the unreasonably low offering price equally diluted the value of all existing shares.  Participating shareholders and nonparticipating shareholders, therefore, were harmed equally by the offering.  The mere fact that the participating shareholders were able and willing to offset the injury to their

existing shares partially or completely by purchasing new shares at the unreasonably low price did not lessen the dilution of their existing shares.  The plaintiffs' argument improperly distracts our attention from the injuries that flow to the corporation from the defendants' allegedly wrongful conduct by focusing on the benefits to certain shareholders that accrued therefrom." *Id.*  Here as was the case in *May*, Moore is distracted from the allegedly wrongful conduct by focusing on the benefits that F.A. Investment accrued in its capacity as a lender of the funds.   As was the case in *May*, it is undisputed that the effect of treating the funds as a loan resulted in a diminished distribution of profits to all shareholders as a result of the Company having incurred a debt.  Therefore, Plaintiff cannot maintain a direct cause of action for breach of fiduciary duty based on this alleged conduct.

Moreover, considering the fact that Moore asserts that F.A. Investment was an investor in the corporation and there was never any written agreement that F.A. Investment would provide funds to the Corporation as operating capital or a gift rather than for a return on its capital, the Plaintiff has not shown that F.A. Investment as a majority shareholder had a fiduciary duty to provide operating capital without consideration as a gift to the Corporation.  Therefore it would be questionable if F.A Investment breached its fiduciary duty as a majority shareholder by insisting that it receive a return on its investment by characterizing the infusion of funds as a loan.  However, the Court need not address this issue as it is clear that the injury from F.A. Investment's insistence that the Corporation treat the funds as a loan was a derivative one.

16

**d. The injury to Moore from F.A. Investment's forcing the Corporation to focus on the Viper and not sell any Wildley survivor guns is not separate and distinct from that suffered by the Corporation or all shareholders**

Moore alleges that F.A. Investment "prohibited Plaintiff from selling any Wildey Survivor guns or parts or manufacture and sell ammunition to generate revenue; further stripping Plaintiff of his ability to obtain a monetary return from his stock ownership" and "required that Plaintiff's work focus entirely on the Viper pistol and other projects of the King without attention to the overall financial health of the Corporation." [Dkt. #1, Compl. at ¶15].  Moore appears to be suggesting that the effect of F.A. Investment prohibiting the Corporation from selling any Wildey Survivor guns and requiring the Corporation to focus on the Viper pistol resulted in lower profits for the Corporation.   In fact, Moore concedes and acknowledges in his own allegation that that the consequence of the decision to focus on the Viper was detrimental to "overall financial health of the corporation" and admits that any damage resulting from the any damage resulting from F.A. Investment's alleged decision to focus on the Viper pistol rather than the Wildey Survivor firearm equally affected the value of both Moore's minority shares and F.A. Investment's majority shares.  . [Dkt. #33, Def. Local 56 Statement at ¶12].  Therefore Moore has failed to prove he suffered an injury distinct and separate from that of the Corporation or F.A. Investment as majority shareholder.  To the extent that the Corporation was less profitable and that resulted in the shares of the Corporation being devalued, such injury to Moore's stock is first derivative to the Corporation's injury and second the resulting effect on the value of the shares equally impacted both Moore and F.A. Investment's shares.   As discussed above, Moore's allegations that F.A. Investment forced the

17

Corporation to focus on the Viper and not sell any Wildey guns are really a claim that F.A. Investment interfered with the Corporation's revenues and therefore must be brought derivatively.  Accordingly, Plaintiff cannot maintain a direct cause of action for breach of fiduciary duty based on this alleged conduct.

### e. *Moore has not alleged that he suffered a distinct and separate injury from F.A. Investment's attempts to force him to sell his interest for little value*

Moore has alleged that "[k]nowing of Plaintiff's financial and physical vulnerability due to a recent stroke" Samman, on behalf of FAI and KADDS, proceeded to continue to apply financial pressure on the Plaintiff in an attempt to have him sell his 49% interest to FAI for relatively little value; continually misrepresenting to the Plaintiff that the Viper pistol was a failure."  [Dkt. #1, Compl. at ¶15].   F.A. Investment argues that Moore has not alleged any injury since he did not sell his shares in response to F.A. Investment's alleged conduct and therefore cannot maintain a cause of action for breach of fiduciary duty.

Under Connecticut Law, the essential elements to pleading a cause of action for breach of fiduciary duty are "(1). That a fiduciary relationship existed which gave rise to (a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any matter relating to the plaintiff; (2). That the defendant advanced his or her own interests to the detriment of the plaintiff; (3). That the plaintiff sustained damages; (4). That the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty."  *McCreary v. One Strawberry Hill Ass'n,*

18

*Inc.*,No.FSTCV106006749S, 2011 WL 2150442, at *2 (Conn. Super. Ct. April 29, 2011) (Internal quotation marks and citation omitted).   Here Moore does not allege that he succumbed to the alleged pressure and did not sell his shares to F.A. Investment for little value.   Instead, his response Summary Judgment alleges that he suffered damages as a result of F.A. Investment's attempts to force him to sell his minority shares in that he was forced to agree to characterize sums paid by F.A. Investments or KADDB as loans.  [Dkt. #39, Pl. Local Rule 56 Statement at ¶15].  However as discussed above, the injury from characterizing the funds provided by F.A. Investment as loans was an injury to the Corporation and to the extent that the Corporation's accrual of debt impacted the profits of the Corporation and resulted in Moore's shares having less value that injury would also have the same effect on F.A. Investment's shares.   Consequently, the injury Moore alleges that he suffered that was proximately cause by F.A. Investment's attempt to force him to sell his shares is not separate and distinct from that of the Corporation and therefore it must be brought derivatively.

The Court notes it need not address whether Moore has standing to sue directly if Moore had sold his shares for little value since Moore has admittedly not suffered that particular injury.

f. *The injury to Moore from F.A. Investment's proposed amendment to the MLA is not separate and distinct from that suffered by the Corporation or all shareholders*

Moore alleges that F.A. Investment "proposed to amend the MLA to circumvent the Corporation and Plaintiff's role in importing and exporting the Viper pistol." [Dkt. #1, Compl. at ¶15].  First, Moore acknowledges that the

proposed amendment to the MLA would have the effect of circumventing the
Corporation's role in importing and exporting the Viper and therefore Moore
essentially concedes that the injury sustained by the proposed amendment is one
that belongs to the Corporation.   It also does not appear that Moore in his
capacity as a minority shareholder had any unique rights or responsibilities with
respect to the MLA.   Therefore whatever injurious effect the proposed
amendment had would solely accrue to the Corporation.   Accordingly whatever
injurious impact it had on the value of Moore's shares would be derivative of the
injury of the Corporation.   Accordingly, Plaintiff cannot maintain a direct cause of
action for breach of fiduciary duty based on this alleged conduct.

### g. *Moore cannot recover for breach of fiduciary duty based on an employment dispute*

Moore alleges that he was fired from his employment with the Corporation.
[Dkt. #1, Compl. at ¶15].   However there is no authority under Connecticut law
"which supports a claim that the termination of employment of an employee-
shareholder by action of the other shareholders and the corporation gives rise to
a cause of action for breach of a fiduciary duty." *Lobo v. Rock*, No.332930, 1993
WL 280239, at *2 (Conn. Super. Ct. July 15, 1993) (citations omitted).   Here, Moore
has not alleged that his termination resulted in a unique and distinct harm to him
in his capacity as minority shareholder.   Further, under Delaware law, which
Connecticut courts routinely look towards as instructive, it is well established
that "a shareholder of a closely held corporation who is also an employee cannot
recover for breach of fiduciary duty where the claim is essentially an employment
dispute."   *Wall Street Sys., Inc. v. Lemence*, No.04CIV.5229(JSR), 2005 WL

20

2143330, at *8 (S.D.N.Y. Sept. 2, 2005) (interpreting Delaware law).   Accordingly,

Moore cannot recover for breach of fiduciary duty as his claim involves a

quintessential employment dispute.

### h. The injury to Moore from his removal from the board of directors is not separate and distinct from that suffered by the Corporation or all shareholders

Moore alleges that F.A. Investment removed himself and his wife as

directors of the Corporation.  [Dkt. #1, Compl. at ¶15].  Under the Corporation's

By-Laws, it expressly provides that "Directors need not be Shareholders and

need not be residents of Connecticut."  *See* [Dkt. #38, By-Laws, Ex. 5. Article IV

§1].  Therefore Moore did not have a right to serve as a director on the basis of

his status as a minority shareholder.   The By-Laws also provides that any

director may be removed with cause at any time by the act of shareholders.  [*Id.*

at Article IV §7].  Moore has not alleged nor has he put forth any facts that he was

removed as a director in violation of the terms of the Corporation's By-Laws.

Since Moore did not have a right as a shareholder to serve as a director, any

injury he suffered from being removed as a director is therefore unrelated to his

status as a minority shareholder.

Again, Moore is focusing on the wrong inquiry and injury by confusing the

fact that he had multiple roles and served the Corporation in multiple capacities.

As discussed above, Moore cannot maintain a cause of action for breach of

fiduciary duty for conduct that was related to his role as an employee in the

Corporation and unrelated to his role as a minority shareholder.  Similarly, Moore

cannot maintain a cause of action for breach of fiduciary duty for conduct that was related to his role as a director which was unrelated to his role as a minority shareholder.   Accordingly, the specific injury to Moore from his removal as a director does not flow from his status as a minority shareholder since he had no right as a minority shareholder to serve as a director.   Further, Moore does not explain how his removal from the Corporation's board of directors had any unique or peculiar effect on his rights as a minority shareholder nor does Moore argue that under Connecticut Law a majority shareholder has a fiduciary duty to ensure that a minority shareholder participates in a corporation's business as a director of a corporation.

The Court notes that directors of a corporation have a fiduciary duty to the corporation itself and its shareholders.  *See Pacelli Bros. Transp., Inc. v. Pacelli*, 189 Conn. 401, 407 (1983) ("An officer and director occupies a fiduciary relationship to the corporation and its stockholders. He occupies a position of the highest trust and therefore he is bound to use the utmost good faith and fair dealing in all his relationships with the corporation") (internal quotation marks and citations omitted).  Since a director occupies a fiduciary relationship to a minority shareholder, a minority shareholder will have an interest in ensuring that only competent individuals serve as directors.   To the extent that Moore's injury derives from the fact that a competent director, namely himself and his wife, were removed from the board that injury would really belong to the Corporation and all shareholders and is therefore not unique to Moore as a minority shareholder. The harm from having a less able and competent board of directors is an injury

that belongs to the Corporation in general and therefore Moore in his capacity as a minority shareholder did not suffer any unique or distinct injury as is necessary to bring an direct action.

Moore relies on the Connecticut Supreme Court's decision in *Yanow* and the Connecticut Superior Court's decision in *Leblanc v. Tomoiu*,No. X08CV065001421S, 2007 WL 18288989, at *5 (Conn. Super. Ct. June 5, 2007), interpreting *Yanow* as support for the proposition that a direct cause of action may be maintained where a minority shareholder has been ousted from management of a corporation and where the majority shareholder has looted the corporation.  However the facts and circumstances of both these cases are inapposite to the present case.  In addition, it appears that *Yanow*'s holding has been narrowed by the Connecticut Supreme Court's subsequent decisions in *May* and *Fink v. Golenbock*.

In *Yanow*, a minority shareholder in a subsidiary company which was merged into a parent company in a short-form merger brought an action for breach of fiduciary duty against the parent corporation and its officer.  178 Conn. at 265.  The Connecticut Supreme Court concluded that allegations that the parent corporation and its officer looted the subsidiary corporation and failed to disclose important facts concerning corporation transactions stated personal as opposed to derivative causes of action.  The Connecticut Supreme Court reasoned that plaintiffs had alleged that the officer of the parent company "took advantage of special facts concerning" the subsidiary company's financial condition which he failed to disclose to the plaintiff and "caused the merger to

23

deprive the plaintiff of his shares and avoid paying the plaintiff their full fair market value." *Id.* at 283.  The Connecticut Supreme Court found that "these causes of action [we]re based upon alleged unlawful acts relating solely to the stock owned by the plaintiff, in violation of the fiduciary duty owed the plaintiff by the defendants, and they thus state individual, and not derivative, claims." *Id.*

However, unlike in *Yanow* F.A. Investment has not deprived Moore of his shares or avoided paying Moore the full market value for his shares.  In *Yanow,* the Connecticut Supreme Court's conclusion that the plaintiff had alleged a direct cause of action was based on its conclusion that the plaintiff alleged a unique injury in that he was entirely deprived of the value of his shares when the short-form merger was accomplished.  Here there is no equivalent injury to Moore's shares as it is undisputed that Moore still has a 49% interest in the Corporation and did not succumb to F.A. Investment's attempts to force him to sell that interest.  Moore's alleged injuries are therefore substantially different from the plaintiff in *Yanow* as Moore was not deprived of the value of his shares.   The *Yanow* court's conclusion that the plaintiff sustained a loss separate and distinct was largely premised on the fact that only the plaintiff and no one else was deprived of the value of the shares through the short-form merger.  Since there was no short-form merger and Moore has not been forced to sell his shares for under market value, Moore has not alleged an injury that is peculiar to him as was the case in *Yanow*.

Further, Moore has not alleged that F.A. Investment has totally looted the value of the Corporation as was the case in *Yanow*.   In *Yanow*, the Connecticut

Supreme Court suggested that "[i]f the controlling majority stockholder seeks to injure the minority stockholder through the means of looting the corporation or so wrecking it that the minority stockholder would get nothing out of his assets, the claim resulting therefrom is sufficient to constitute an individual action." *Id.* at 282 n. 9.  However, Moore has not alleged that F.A. Investment had so drained the Corporation of its assets that Moore's shares are effectively worthless.  In addition, the *Yanow* court also noted that "[g]enerally, individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the shareholder individually, but to the corporation- to the shareholders collectively." *Id.* at 282.  Here Plaintiffs allegations are really that F.A. Investment had mismanaged the Corporation when it forced the Corporation to focus on the Viper, cancelled the Jordanian surplus contract, and prohibited the Corporation from selling the Wildey firearm as opposed to an allegation that F.A. Investment so looted the Corporation that Moore would get nothing out his minority ownership interest in the Corporation.

Lastly, it appears that the Connecticut Supreme Court has subsequently narrowed its holding in *Yanow* regarding allegations of corporate looting.  As discussed above, the Connecticut Supreme Court in *Yanow* contemplated that a direct action could be maintained where there were allegations that "controlling majority stockholder seeks to injure the minority stockholder through the means of looting the corporation or so wrecking it that the minority stockholder would get nothing out of his assets." *Yanow*, 178 Conn. 281.  However, subsequently in

*May* the Connecticut Supreme Court explained that "nothing in our case law suggests, that an individual cause of action is required when a derivative action would have the indirect effect of redressing an injury to those shareholders whose self-dealing caused the harm to the corporation." *May*, 291 Conn. at 118. The Connecticut Supreme Court then cited to a Ninth  Circuit  decision which held that "[e]ven if the [majority shareholders] depleted [the corporation's] assets with the sole purpose of decreasing the value of [the minority shareholder's] stock and destroying his return on his investment, the action would nonetheless be derivative." *Id.* at 119 (quoting *Sax. v. World Wide Press, Inc.*, 809 F.2d 610, 614 (9th Cir. 1987)).

The *May* court also pointed to the Connecticut Supreme Court's decision in *Fink v. Golenbrook*, 238 Conn. 183 (1996) in which it concluded that a shareholder of one half of a closely held corporation could initiate a derivative action against the holder of the other half who "allegedly prevented the plaintiff from participating in the business of the corporation, used corporation assets to establish a new corporation, lost corporate funds in speculative investments and falsely informed corporation clients that the corporation no longer existed." *Fink*, 238 Conn. at 202.   In *Fink*, the Connecticut Supreme Court concluded the defendant's alleged conduct violated the "statutory duty of care he owed to the corporation.  Therefore, a derivative suit on behalf of the corporation was appropriate." *Id.*

The *May* court noted that in *Fink* "we rejected the defendant's argument that, in the case of a closely held corporation in which the plaintiff and the

defendant were the only shareholders, any injury caused by the defendant necessarily was an injury to the plaintiff individually, and not an injury to the corporation." *May*, 291 Conn. at 120 (citation omitted).  The *May* court also explained that in *Fink* the Connecticut Supreme Court contemplated that "'there may be some instances in which the facts of a case give rise either to a direct action or to a derivative action-such as when an act affects both the relationship of the particular shareholder to the corporation and the structure of the corporation itself, causing or threatening injury to the corporation.'" *Id.* (citing Fink, 238 Conn. at 202-203).  However, a claim of looting or wasting of assets is one which does not affect both the structure of the corporation and the relationship of the shareholder to the corporation.  Instead a claim of looting is really an injury to the corporation which then affects the relationship of the shareholders to the corporation.

Accordingly, the Supreme Court's subsequent decisions in *Fink* and *May* clarify that a cause of action based on allegations of corporate looting which had the effect of destroying the Corporation's assets should be considered derivative actions as the harm is really to the Corporation and not the shareholders.  The Connecticut Supreme Court has even suggested this would still be the case even where the looting was done with the sole purpose of decreasing the value of the minority shareholder's stock.  Accordingly, Moore's reliance on *Yanow* to demonstrate that he is entitled to maintain a direct action is unpersuasive.

Moore also relies on Connecticut Superior Court's decision in *Leblanc v. Tomoiu* for the proposition that a direct action is appropriate where the majority

shareholder has looted the corporation and also where a minority shareholder has been ousted from management of a corporation.  In *Leblanc*, the minority shareholder brought an action for breach of fiduciary duty against the former officers, directors and shareholders of the company who allegedly came into control of the company and transferred all its assets and technologies to another company owned and controlled by the defendants in a short-form merger.  2007 WL 1828898, at *1.  The *Leblanc* court concluded that plaintiff's allegations that he was a "victim of a 'freeze-out' acquisition in violation of fiduciary duties and disclosure obligations owed by the majority to the minority, and that as a result he has been ousted from management of the corporation and the corporation has been 'looted' of all its assets and forced to shut down" stated a claim that is distinct to him as a minority shareholder.  *Id.* at *5.  The *Leblanc* court relied heavily on the Supreme Court's decision in *Yanow* in concluding that the plaintiff's allegations stated a direct claim.   However as was the case in *Yanow*, the facts and circumstances in *Leblanc* are inapposite to the present case for many of the same reasons.  Again, since Moore has not been the victim of a short-form merger and has not been deprived of the value of his shares, he does not have the same type of injury as alleged in both *Yanow* and *Leblanc*.  In addition, Moore has not alleged that F.A. Investment has looted the Corporation of all its assets as was the case in both *Yanow* and *Leblanc*.

Moreover, the Court does not find the *Leblanc* court's conclusion that the plaintiff can maintain a direct claim on the basis of his allegation that he was ousted from management persuasive in light of the Connecticut Supreme Court's

decision in *Fink*.  In *Fink*, the plaintiff alleged that the defendant had conspired to drive the plaintiff out of the medical practice and prevented him from returning to the practice.  The Connecticut Supreme Court concluded that the defendant had violated a duty to the corporation when he "allegedly prevented plaintiff from participating in the business of the corporation" among other conduct and therefore had appropriately brought a derivative action.  238 Conn. at 201-202.  As was the case in *Fink*, Moore has alleged that F.A. Investment through Samman has conspired to drive him out of Corporation's business by terminating his employment and removing him as a director from the Board.  However, as the *Fink* Court concluded these allegations state a claim that F.A. Investment had violated a duty it owed to the Corporation and not to Moore as a minority shareholder.  In addition, the *Leblanc* court's analysis is not persuasive as the *Leblanc* court appears to assume without considering whether the majority shareholder has a duty to include the minority shareholder in the management of the corporation and does not consider whether the duty allegedly breached was a duty to the Corporation or the minority shareholder.  Accordingly, the Court finds that Moore's reliance on *Leblanc* is likewise unpersuasive.

In sum, Moore has failed to demonstrate that he suffered an injury distinct and separate from that suffered by the Corporation or by all shareholders from any of Defendant's alleged conduct and therefore lacks standing to bring a claim for breach of fiduciary duty directly.  In addition, Moore cannot bring a claim for breach of fiduciary duty in connection with conduct that is unrelated to his status as minority shareholder.  As discussed above, Moore cannot maintain a direct

claim for breach of fiduciary duty for conduct related to his status as an employee or as a director of the Corporation.  Moore has further indicated that he does not intend to seek leave to amend his complaint to bring a derivative action. Accordingly, the Court grants Defendant's motion for summary judgment.

**Conclusion**

Based upon the above reasoning, the Defendant's [Dkt. #31] motion for summary judgment is GRANTED.  The Clerk is directed to enter judgment in favor of Defendant and close the file.


IT IS SO ORDERED.


_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge


Dated at Hartford, Connecticut: March 4, 2012